JAMES A. MARISSEN (SBN: 257699)
jmarissen@grsm.com
RACHEL A. WEITZMAN (SBN: 307076)
rweitzman@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 255-6996
Facsimile: (949) 474-2060

Attorneys for Plaintiff
APL CO. PTE LTD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE LTD<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>WYNSTREAM INC.; WYNSTREAM PACIFIC INC.; JUSTIN CHIU; QUAN XIONG GUAN aka BARRY GUAN; and ANDPLASTIC TRADE CO. LTD.<br><br>　　　　　　Defendants. | CASE NO. 2:20-cv-06397-GW-PLA<br><br>**PLAINTIFF APL CO. PTE LTD'S FIRST AMENDED COMPLAINT** |

COMES NOW Plaintiff, APL CO. PTE LTD ("APL"), and its First Amended Complaint and causes of action against Defendants WYNSTREAM INC., WYNSTREAM PACIFIC INC., JUSTIN CHIU, QUAN XIONG GUAN aka BARRY GUAN (collectively "WYNSTREAM DEFENDANTS") and ANDPLASTIC TRADE CO., LTD. ("ANDPLASTIC") (collectively "DEFENDANTS") alleges as follows:

**JURISDICTION AND VENUE**

1. This is a maritime claim for breach of contract and unpaid detention, demurrage, destruction and/or other costs pursuant to ocean bills of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). It also

-1-
PLAINTIFF APL CO. PTE LTD'S FIRST AMENDED COMPLAINT

presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 et seq.

2. In the alternative, as there is complete diversity between APL on one hand, and DEFENDANTS on the other hand, and the amount in controversy exceeds jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject matter jurisdiction over this action.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (3) in that a substantial part of the events or omissions giving rise to the claim occurred within this district, and at least one of the DEFENDANTS is a resident of this judicial district pursuant to 28 U.S.C. § 1391(c)(2), with its principal place of business within the judicial district of this Court and there is no other district in which an action may otherwise be brought. Venue is also proper in this Court as it is the contractually agreed upon forum pursuant to the operative ocean bills of lading.

## PARTIES

4. Plaintiff APL is now, and at all material times was, a foreign corporation duly organized and existing under the laws of Singapore, with a principal place of business at 9 North Buona Vista Drive #14-01, The Metropolis Tower 1, Singapore, 138588. APL was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant WYNSTREAM INC. is now, and at all material times was, a corporation organized and existing under the laws of California, with its principal place of business at 344 E. Arlight St., Monterey Park, California 91755.

6. Defendant WYNSTREAM PACIFIC INC. is now, and at all material times was, a corporation organized and existing under the laws of California, with

its principal place of business at 398 Lemon Creek, Dr., Unit L, Walnut, California 91789.

7. Defendant JUSTIN CHIU is an individual living at 12984 Orange Ave., Chino, California 91710. JUSTIN CHIU is the Secretary of Defendant WYNSTREAM INC. and the Chief Executive Officer of Defendant WYNSTREAM PACIFIC INC.

8. Defendant QUAN XIONG GUAN aka BARRY GUAN is an individual living at 23223 Quail Summit Dr., Diamond Bar, California 91789. QUAN XIONG GUAN aka BARRY GUAN is the Incorporator, Chief Executive Officer and Chief Financial Officer for Defendant WYNSTREAM INC. and the Secretary and Chief Financial Officer of Defendant WYNSTREAM PACIFIC INC.

9. Defendant ANDPLASTIC TRADE CO. LTD. is now, and at all material times was, a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Rm. 2105 Trend Centre, 29-31 Cheung Lee Street, Chai Wan, Hong Kong.

10. APL alleges that there may be additional entities or individuals that may be responsible in some manner for the occurrences and injuries alleged in this First Amended Complaint. Their names and capacities are currently unknown to APL at this time. APL will amend this First Amended Complaint to add such additional parties when the same have been ascertained. APL is informed, believes and thereon alleges that each additional entity or individual is liable for the acts and/or omissions as set forth below, and that APL's rights against such additional entity or individual arises from such acts and/or omissions.

**RELATIONSHIP BETWEEN DEFENDANTS**

11. At all material times, there existed such unity of ownership and interest between Defendants JUSTIN CHIU and QUAN XIONG GUAN aka BARRY GUAN on the one hand, and Defendants WYNSTREAM INC. and

WYNSTREAM PACIFIC INC. on the other hand, such that no separation exists between them and the corporate forms of Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC. have been disregarded such that Defendants JUSTIN CHIU and QUAN XIONG GUAN aka BARRY GUAN primarily transact the business of Defendants WYNSTREAM INC. and/or WYNSTREAM PACIFIC INC.

12. At all material times, Defendants JUSTIN CHIU and QUAN XIONG GUAN aka BARRY GUAN were the sole corporate officers and directors of both Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC., and controlled the operations of Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC. and acted in their individual capacities through Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC.

13. At all material times, Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC. operated out of the same principal place of business at 398 Lemon Creek, Dr., Unit L, Walnut, California 91789.

14. Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC. have common business departments, directed and controlled by Defendants JUSTIN CHIU and QUAN XIONG GUAN aka BARRY GUAN.

15. The WYNSTREAM DEFENDANTS, in actual practice, pursued business as a single business entity, confusing and commingling assets, holding themselves out to the public to be a single business and in every respect acting as an integrated single business enterprise in which JUSTIN CHIU and QUAN XIONG GUAN aka BARRY GUAN were and are the alter egos of Defendants WYNSTREAM INC. and WYNSTREAM PACIFIC INC. and WYNSTREAM PACIFIC INC. was and is the alter ego of WYNSTREAM INC.

## FACTUAL BACKGROUND

16. Between June and July, 2019, ANDPLASTIC contracted with the WYNSTREAM DEFENDANTS for the shipment of sixty-six (66) containers

("Containers") of plastic scrap cargo from various ports of loading to Jakarta, Indonesia.

17. The WYNSTREAM DEFENDANTS subsequently contracted with APL for the carriage of the Containers under twenty-five (25) APL Bills of Lading as follows:

    i. APL Bill of Lading AYU0241508 dated June 16, 2019, with container no. TCNU1186024 aboard the M/V *Undarum* from Honolulu, Hawaii to Jakarta, Indonesia ("Shipment 1");

    ii. APL Bill of Lading AYU0240939 dated June 18, 2019, with container nos. APHU7051773 and TCNU5118990 aboard the M/V *CMA CGM Elbe* to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 2");

    iii. APL Bill of Lading AYU0240120 dated June 30, 2019, with container no. SEGU6073153 aboard the M/V *CMA CGM Cendrillon* from Miami, Florida to Jakarta, Indonesia ("Shipment 3");

    iv. APL Bill of Lading AYU0242595 dated July 1, 2019, with container no. SEGU4084539 aboard the M/V *CMA CGM Ivanhoe* from Kansas City, Kansas to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 4");

    v. APL Bill of Lading AYU0245305A dated July 2, 2019, with container nos. HJCU1416248, GESU5574032, and CMAU4632216 aboard the M/V *CMA CGM Thames* from Savanah, Georgia to Jakarta, Indonesia ("Shipment 5");

    vi. APL Bill of Lading AYU0240961 dated July 3, 2019, with container no. SEGU4626917 aboard the M/V *CMA CGM Thames* from Memphis, Tennessee to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 6");

  vii. APL Bill of Lading AYU0241783 dated July 6, 2019, with container no. TGHU8428693 aboard the M/V *CMA CGM Melisande* from Miami, Florida to Jakarta, Indonesia ("Shipment 7");

  viii. APL Bill of Lading AYU0249405 dated July 10, 2019, with container nos. TCNU5750699, ECMU9826161, CMAU4745697, BMOU6407443, SEGU6286992, APHU6513250, and TCLU9584346 aboard the M/V *APL Detroit* from Savannah, Georgia to Jakarta, Indonesia ("Shipment 8");

  ix. APL Bill of Lading AYU0252927 dated July 11, 2019, with container nos. TCNU2515823, CMAU7964261, and APHU6243880 aboard the M/V *E.R. Tianping* from Houston, Texas to Jakarta, Indonesia ("Shipment 9");

  x. APL Bill of Lading AYU0258142 dated July 11, 2019, with container no. CMAU7573333 aboard the M/V *Baltic Bridge* from Tampa, Florida to Jakarta, Indonesia ("Shipment 10");

  xi. APL Bill of Lading AYU0240943 dated July 12, 2019, with container nos. CMAU6309619 and APHU6678157 aboard the M/V *APL Detroit* from Atlanta, Georgia to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 11");

  xii. APL Bill of Lading AYU0245279 dated July 12, 2019, with container nos. APHU6562763 and APHU6942758 aboard the M/V *CMA CGM Norma* from Cleveland, Ohio to Jakarta, Indonesia via the port of Norfolk, Virginia ("Shipment 12");

  xiii. APL Bill of Lading AYU0241805 dated July 12, 2019, with container nos. ECMU9676380, CMAU6246845, TCKU6258816, ECMU9781088, and FSCU7202189 aboard

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

the M/V *APL Detroit* from Memphis, Tennessee to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 13");

xiv. APL Bill of Lading AYU0240976 dated July 14, 2019, with container no. TCNU3600386 aboard the M/V *JRS Corvus* from Honolulu, Hawaii to Jakarta, Indonesia ("Shipment 14");

xv. APL Bill of Lading AYU0245203 dated July 15, 2019, with container nos. CMAU6471907 and CMAU7136246 aboard the M/V *CMA CGM Orfeo* from Kansas City, Kansas to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 15");

xvi. APL Bill of Lading AYU0245482 dated July 15, 2019, with container nos. CMAU4531144 and FSCU8336238 aboard the M/V *CMA CGM Orfeo* from Salt Lake City, Utah to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 16");

xvii. APL Bill of Lading AYU0240965 dated July 18, 2019, with container nos. CMAU5895789, TCNU3508351, ECMU9531540, CAIU9169360, MAGU5440500, CMAU6249166, APHU6542324, TGBU5236289, GCNU4775766, and TCLU8349065 aboard the M/V *CMA CGM Norma* from Charleston, South Carolina to Jakarta, Indonesia ("Shipment 17");

xviii. APL Bill of Lading AYU0245200 dated July 18, 2019, with container no. GESU6685220 aboard the M/V *Cape Akritas* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 18");

xix. APL Bill of Lading AYU0246370 dated July 18, 2019, with container nos. CMAU4861763, TCKU6277987, TGBU6971631, and TCKU6394622 aboard the M/V *E.R. Tianping* from Tampa, Florida to Jakarta, Indonesia ("Shipment 19");

xx. APL Bill of Lading AYU0240957 dated July 19, 2019, with container no. TGHU9501150 aboard the M/V *Ever Liven* from Boston, Massachusetts to Jakarta, Indonesia ("Shipment 20");

xxi. APL Bill of Lading AYU0252470 dated July 19, 2019, with container nos. TCNU9505811, TCNU3213915, TEMU8240615, GESU6583023, and TCNU8009020 aboard the M/V *CMA CGM La Scala* from Houston, Texas to Jakarta, Indonesia ("Shipment 21");

xxii. APL Bill of Lading AYU0245485 dated July 22, 2019, with container no. TGHU8962414 aboard the M/V *E.R. Tianping* from Miami, Florida to Jakarta, Indonesia ("Shipment 22");

xxiii. APL Bill of Lading AYU0245017 dated July 22, 2019, with container nos. CMAU4430149, TCNU3633749, and ECMU9772208 aboard the M/V *CMA CGM Loire* from Salt Lake City, Utah to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 23");

xxiv. APL Bill of Lading AYU0245487 dated July 23, 2019, with container nos. TCNU1090935, TRIU9922664, APHU7116473, and ECMU9591848 aboard the M/V *CMA CGM Pelleas* from Memphis, Tennessee to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 24"); and

xxv. APL Bill of Lading AYU0260430 dated July 26, 2019, with container nos. APHU6953515 and PCIU9819740 aboard the

M/V *Acacia Virgo* from Honolulu, Hawaii to Jakarta, Indonesia ("Shipment 25").

18. APL carried the Containers for Shipments 1 through 25 to Jakarta, Indonesia pursuant to the terms and conditions of the relevant APL Bills of Lading.

19. At all material times, WYNSTREAM INC. and ANDPLASTIC were the named shippers under the APL Bills of Lading, and thus they both qualify as a "Merchant" under Clause 1 of the Standard Terms and Conditions of the APL Bills of Lading.

20. At all material times, Defendants JUSTIN CHIU, QUAN XIONG GUAN aka BARRY GUAN, and WYNSTREAM PACIFIC INC. were and are the alter ego and/or agents of Defendant WYNSTREAM INC. and as such are bound to the Standard Terms and Conditions of the APL Bills of Lading pursuant to Clause 1.

21. DEFENDANTS were the entities for whose account the transportation services were provided by APL, were the parties that received and benefitted from the transportation services provided by APL, and were the entities responsible for payment of charges relating to the Containers.

22. DEFENDANTS tendered the Containers for Shipments 1 through 25 to APL for transportation to for which freight and other charges were lawfully incurred pursuant to the terms of the APL Bills of Lading and/or applicable tariff(s).

23. APL's Bill of Lading Standard Terms and Conditions (as applicable to the relevant APL Bills of Lading) provides the following:

> **"Merchant"** includes the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Freight, and for the performance of the obligations of any of them under this Bill of Lading.

...

**11. NOTIFICATION AND DELIVERY**

...

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.

(4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

…

**13. LIEN**

The Carrier, its servants or agents shall also have a lien on and the right to sell whether privately or by public auction, the Goods carried under this Bill of Lading and any documents relating thereto, for all sums including Freight and charges including but not limited to primage, deadfreight pre-carriage and/or inland Carriage whatsoever, demurrage, container demurrage and storage charges, detention charges, salvage, general average contribution, due and outstanding, which are for the account of the Goods or any other Contracts for the Carriage of Goods concluded between the Carrier, its servants or agents and the Merchant, at any time where such sums or Freights

remains due and unpaid; and for the costs and expenses of exercising such lien and/or of such sale.

If the goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods are likely to become deteriorated, decayed or worthless, the Carrier may, at its discretion without responsibility whatsoever, auction, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the difference between the amount due to him by the Merchant and the amount realised by the exercise of the rights given to the Carrier under this Clause.

**26.    SHIPPER'S / MERCHANT'S RESPONSIBILITY**

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

24.    Between July and August 2019, the Containers for Shipments 1 through 25 arrived and were discharged in Jakarta, Indonesia and made available for collection.

25.    Due to DEFENDANTS' failure to comply with local import regulations, the Containers were seized by local governmental authorities and the Containers remain idle in Jakarta, Indonesia.

26. To date, DEFENDANTS have failed to take delivery of the Containers and/or provide any other shipping instructions and/or comply with local import regulations for the Containers in Shipments 1 through 25.

27. Accordingly, the Containers for Shipments 1 through 25 remain idle at the marine terminal in Jakarta, Indonesia, thereby accruing various daily and other charges including detention and demurrage.

28. Having affected delivery of the Containers to Jakarta, Indonesia, APL fully performed all of its obligations under the APL Bills of Lading.

29. As a result of DEFENDANTS' failure to take delivery of the Containers, and/or provide any other shipping instructions, and/or comply with local import regulations, APL has incurred damages, liabilities, charges, expenses, fees and costs for detention, demurrage, and destruction.

30. Under the terms of the APL Bills of Lading and/or applicable tariffs, DEFENDANTS are obligated to pay these costs, damages, and expenses due and owing to APL.

31. As of July 13, 2020, these costs, damages and expenses due and owing by Defendants to APL total $1,500,615.71. These costs, damages and expenses continue to accrue while the Containers remains idle.

32. APL fully performed all of its obligations under the APL Bills of Lading. DEFENDANTS received and benefited from the transportation services provided by APL, and are responsible for payment of all these various damages, expenses and costs relating to the idle containers for Shipments 1 through 25.

## FIRST CAUSE OF ACTION
(For Breach of Maritime Contract)

33. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 32 above.

PLAINTIFF APL CO. PTE LTD'S FIRST AMENDED COMPLAINT

34. APL transported and carried the Containers for Shipments 1 through 25 at the request and for the benefit of DEFENDANTS, in accordance with the applicable terms and conditions of the APL Bills of Lading.

35. APL fully performed all of its obligations under the APL Bills of Lading and carried the Containers from various United States ports and successfully discharged the Containers in Jakarta, Indonesia.

36. Under the applicable terms and conditions of the APL Bills of Lading and applicable law, DEFENDANTS were required to provide shipping instructions and/or accept delivery, and/or comply with local import regulations for the Containers within the time provided for in APL's Bills of Lading, and agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from its failure to provide shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers.

37. Under the applicable terms and conditions of the APL Bills of Lading and applicable law, DEFENDANTS agreed to be liable and responsible for any and all detention, demurrage, destruction and other charges due under the APL Bills of Lading.

38. DEFENDANTS breached the applicable terms and conditions of the APL Bills of Lading by failing to provide shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers, and by failing to pay APL the damages, liabilities, detention, demurrage, destruction, and other related expenses and fees arising from their breach or breaches of the applicable terms and conditions of the APL Bills of Lading.

39. As a proximate cause of DEFENDANTS' breach or breaches of the applicable terms and conditions of the APL Bills of Lading, breach of warranty, and the matters set forth herein, APL has incurred, and DEFENDANTS are jointly and severally liable to APL for, damages in the amount exceeding $1,500,615.71.

1  These costs, damages and expenses continue to accrue while the Containers for
2  Shipments 1 through 25 remain idle.

### SECOND CAUSE OF ACTION
(Money Due Under Marine Tariff)

40.   APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 39 above.

41.   APL transported and carried the Containers for Shipments 1 through 25 at the request and for the benefit of DEFENDANTS, and in accordance with the terms and conditions of the APL Bills of Lading and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

42.   Under the said tariffs, APL is required to collect and is entitled to recover from DEFENDANTS, and DEFENDANTS are required to pay APL, all unpaid demurrage, detention, destruction, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Container, as well as DEFENDANTS' failure to provide required shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers.

43.   Despite demand for payment, DEFENDANTS have failed to pay APL amounts due under the tariffs and tariff compensation is due, owing and unpaid to APL from DEFENDANTS in an amount exceeding $1,500,615.71.  Additional charges continue to accrue in accordance with the terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

### THIRD CAUSE OF ACTION
(Negligence)

44.   APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 43 above.

45.   At all material times herein, DEFENDANTS owed APL a legal duty to exercise due care to provide required shipping instructions, and/or comply with

1  local import regulations, and/or to accept delivery of the Containers for Shipments
2  1 through 25 in Jakarta, Indonesia.
3    46. The legal duty of DEFENDANTS to APL arose because
4  DEFENDANTS are parties to the APL Bills of Lading.
5    47. The legal duties of DEFENDANTS to APL also arose independently
6  of the APL Bills of Lading because of many factors, including, without limitation,
7  the foreseeability of harm to APL from their acts and omissions, the degree of
8  certainty that APL suffered injuries, the closeness of the connection between
9  DEFENDANTS' conduct and the injury suffered.
10   48. DEFENDANTS breached their duty of care by, inter alia, failing to
11 provide required shipping instructions, and/or comply with local import
12 regulations, and/or accept delivery of the Containers in Jakarta, Indonesia, or
13 otherwise arranging for the Containers' delivery.
14   49. As a proximate result of the negligence of DEFENDANTS, APL has
15 incurred, and DEFENDANTS are liable to APL for, additional freight, demurrage,
16 detention, destruction, liabilities, charges, penalties, costs, expenses and fees in an
17 amount exceeding $1,500,615.71, plus any additional damages and costs as they
18 continue to accrue.

## FOURTH CAUSE OF ACTION
(FOR WORK AND LABOR PERFORMED/QUANTUM MERUIT)

21   50. APL refers to and incorporates by reference as though fully set forth
22 at length herein its allegations in paragraphs 1 through 49 above.
23   51. In or about June 2019, and continuing thereafter, DEFENDANTS
24 became indebted to APL for the work and labor performed by APL at the request
25 and for the benefit of DEFENDANTS, for which DEFENDANTS agreed to pay
26 APL.
27   52. Despite due demand, DEFENDANTS, and each of them, owe APL an
28 amount exceeding $1,500,615.71 for said work and labor performed and/or APL is

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

1 entitled to recover the value of said work and labor pursuant to the doctrine of
2 quantum meruit.

### FIFTH CAUSE OF ACTION
(FOR DECLARATORY RELIEF)

53. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 52 above.

54. There is an actual controversy between APL on one hand and DEFENDANTS on the other regarding the legal rights and duties of the parties with respect to the cargo in the Containers. APL contends that DEFENDANTS are responsible and liable to APL for any and all damages, detention, demurrage, liabilities, charges, penalties, expenses, costs and fees arising from the carriage of the cargo in the Containers and/or DEFENDANTS' failure provide required shipping instructions, failure to comply with local import regulations, failure to accept delivery of the Containers, and/or failure to pay freight and other charges.

55. APL is informed and believes and thereupon alleges that DEFENDANTS deny they are responsible and liable to APL for the aforesaid damages, detention, demurrage, liabilities, charges, penalties, expenses, costs and fees, and deny and dispute in some manner the contentions of APL.

56. APL seeks a declaration of the rights and liabilities of APL and DEFENDANTS pursuant to 28 U.S.C. § 2201.

### PRAYER

WHEREFORE, Plaintiff APL prays for judgment against DEFENDANTS as follows:

1. That the Court order judgment in favor of APL and against DEFENDANTS, jointly and severally, in an amount not less than $1,500,615.71 and for any and all additional freight, demurrage, detention, destruction, liabilities, charges, penalties, other costs, expenses and fees caused by DEFENDANTS' breach or breaches of the APL Bills of Lading and/or applicable tariffs and/or

1 negligence, for all amounts due under APL's tariffs, as well any additional
2 damages and costs that continue to accrue at an amount to be established at trial;
3     2.    That the Court award APL its attorneys' fees, costs and expenses
4 incurred as a result of DEFENDANTS' breach or breaches and/or in collecting the
5 sums due from DEFENDANTS;
6     3.    That the Court award APL interest on all of the above as well as its
7 costs of suit;
8     4.    That the Court declare the rights and liabilities of the Parties; and
9     5.    That the Court award such other and further relief as the Court deems
10 just and proper.

Dated: August 13, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *James A. Marissen*
    James A. Marissen
    Rachel A. Weitzman
    *Attorneys for Plaintiff*
    *APL CO. PTE LTD*